UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**          **CRIMINAL NO. 6:19-CR-00046-01**

**VERSUS**                            **JUDGE TERRY A. DOUGHTY**

**RASHEED RIDEAUX**                   **MAGISTRATE JUDGE CAROL B. WHITEHURST**

**MEMORANDUM ORDER**

Pending before the Court is a Motion to Dismiss Indictment [Doc. No. 72] filed by the Defendant, Rasheed Rideaux ("Rideaux"). An Opposition [Doc. No. 78] was filed by the United States of America ("the Government") on April 29, 2021. A Reply [Doc. No. 84] was filed by Rideaux on May 13, 2021.

In his Motion, Rideaux asks to dismiss the Indictment based upon alleged prosecutorial misconduct in the Grand Jury proceedings. For the reasons set forth herein, Rideaux's Motion is **DENIED**.

**I.     BACKGROUND & PROCEDURAL HISTORY**

On February 13, 2019, [Doc. No. 1] an Indictment was returned by a federal Grand Jury against Rideaux for Receiving a Bribe by a Public Official in violation of 18 U.S.C. Section 201(b)(2)(A). A transcript of the Grand Jury testimony was ordered during a suppression hearing on March 31, 2021 [Doc. No. 65].

In his Motion, Rideaux alleges that his Indictment should be dismissed, with prejudice, due to alleged "gross misinformation" presented to the indicting grand jury, which substantially influenced their decision to indict, and/or due to grave doubt that the indicting grand jury's decision was free from such substantial influence. Rideaux alleges that the testimony of Special Agent

Brandon Tullier ("Tullier") was perjury sponsored by the AUSA Jamilla Bynog's ("Bynog") questions.

The Government maintains that there was no perjured testimony and/or no perjured testimony sponsored by the prosecution. The Government argues that, at most, the testimony shows Rideaux disagrees with terms used to describe actions taken by Rideaux and two minor instances of confusion or mistake that did not prejudice Rideaux. In all other respects, the Government maintains the transcript of Tullier's testimony is accurate and truthful.

## II. LAW AND ANALYSIS

### A. Law

A district court may not dismiss an indictment for errors in grand jury proceedings unless the errors prejudiced the defendant. In this context, "prejudice" means that dismissal of the indictment is only appropriate if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations. *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988).

A court's supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of the few, clear rules, which were carefully drafted and approved by the United States Supreme Court and Congress to ensure the integrity of the grand jury's functions. *United States v. Williams*, 504 U.S. 36, 46 (1992).

In *United States v. Strouse*, after a district court found that a civilian witness testified falsely to a grand jury, the Fifth Circuit held that perjury before the grand jury, that was not knowingly sponsored by the Government, may not form the basis for a district court's dismissal of an

indictment under its limited supervisory power over the grand jury process. *United States v. Strouse*, 286 F.3d 767 (5th Cir. 2002).

Therefore, an indictment may not be dismissed under a court's supervisory power for perjury, which did not involve "prosecutorial misconduct." See also *Untied States v. Cisneros*, 456 F. Supp. 2d 286, 287 (S.D. Tex. 2006).

Additionally, a criminal defendant who seeks to obtain dismissal of an indictment bears a "heavy burden" in attempting to justify such relief. *In re Grand Jury Investigation, T. Bertram Lance v. United States Department of Justice*, 610 F.2d 202, 219 (5th Cir. 1980).

### B. Analysis

The first set of questions and answers ("First Q&A") Rideaux takes issue with are found on pages 4-5 of the transcript of Tullier's testimony:

> Q    I want to call your attention back to December the 4th of 2018. On that day did your office receive information concerning an Opelousas city carrier by the name of Rasheed Rideaux?
> A    Yes, ma'am.
> Q    And was that, the information you received concerning Mr. Rideaux, **facilitating the delivery of narcotics postal packages?**
> A    Yes, ma'am.

[Doc. No. 72-8, Tullier Depo., p. 4-5, ll. 21-25, 1-4] (emphasis added).

In the First Q&A, Rideaux argues this testimony caused the grand jurors to believe he was a drug dealer.

The second set of questions and answers ("Second Q&A") addressed by Rideaux are found on page 5 of the transcript of Tullier's testimony:

> Q    After receiving that information on December the 4th, did your office then in turn start an investigation into city carrier Rideaux?
> A    Yes, we did.
> Q    And on December 14th of 2018, did you receive additional information concerning that investigation?
> A    Yes, we did.
> Q    What was that information?

>   A       **We received information that multiple packages coming from California contained suspected narcotics – illegal narcotics that were destined for Mr. Rideaux's route in Opelousas, Louisiana.**
>   Q       And approximately how many suspected drug packages was it this time?
>   A       We ended up intercepting twelve.

[Doc. No. 72-8, Tullier Depo., p. 5, ll. 5-20] (emphasis added).

In the Second Q&A, Rideaux argues that Tullier's testimony left grand jurors under the impression that the twelve packages contained illegal narcotics, when the packages had not been inspected.[1]

The third set of questions and answers ("Third Q&A") addressed by Rideaux are found on pages 5-7 of Tullier's testimony:

>   Q       And those twelve packages, where were they addressed to?
>   A       They were addressed to 720 South Oak Street in Opelousas, Louisiana.
>   Q       Okay. At that time did agents meet with postal management in Baton Rouge and return eleven of those twelve packages back into the mail stream for delivery by Mr. Rideaux?
>   A       Yes, ma'am. Eleven of the twelve were returned the day before so they could be delivered the next day on December 17th.
>   Q       And was the twelfth package retained?
>   A       Yes, it was.
>   Q       And why was it retained?
>   A       It was retained so it could be examined by a K-9 to see if it did in fact contain suspected illegal narcotics.
>   Q       Okay. That K-9, was it a certified drug detection K-9?
>   A       Yes, ma'am.
>   Q       And was that package – that twelfth package ultimately put before that K-9 for detection?
>   A       Yes, it was.
>   Q       And what did the K-9 alert?
>   A       The K-9 did alert that it did contain illegal narcotics.
>   Q       At this time did you then join the venture with the St. Landry Parish Sheriff's Office for this investigation?
>   A       Yes, we did.
>   Q       And did they provide that drug detection K-9?
>   A       Yes, they did.

---

[1] This Court notes that one of the packages was inspected and found to contain illegal narcotics, and, after the other eleven were delivered, the three occupants were found with seventy (70) pounds of high-grade marijuana.

4

| | |
|---|---|
| Q | Okay. And on that day – I believe it's December 16th of 2018 – **did you, along with other special agents, conduct surveillance of Mr. Rideaux while he was on his delivery route?** |
| A | **It was actually December 17th.** |
| Q | Okay |
| A | **And, yes, we did. We did conduct surveillance of Mr. Rideaux.** |
| Q | And what if anything did you observe during the surveillance? |
| A | Well, that morning, Mr. Rideaux left the office, **and instead of going to 720 South Oak, he went clear across town to 425 Carrier Street and delivered the eleven packages.** |

[Doc. No. 72-8, Tullier Depo., p. 5-7, ll. 21-25, 1-25, and 1-16] (emphasis added).

In the Third Q&A, Rideaux is concerned with the language "clear across town," arguing that delivering the packages to 425 Carrier Street, instead of 720 South Oak Street, Opelousas, LA, was not "clear across town." Rideaux maintains the distance between the two locations is 0.7 miles. Rideaux argues that the words "clear across town" implied to the grand jurors that Rideaux went out of his way to deliver the packages.

The fourth set of questions and answers ("Fourth Q&A") addressed by Rideaux are found on pages 11-12 of the Tullier testimony:

| | |
|---|---|
| Q | In addition to interviewing Mr. Rideaux, did he also give agents permission to search his cell phone? |
| A | Yes, he did. |
| Q | And in that cell phone, **did you discover text messages between Mr. Rideaux and an unknown person who's inquiring about the packages that were destined to the South Oak address?** |
| A | Yes, we did. |
| Q | **And in those messages, did Mr. Rideaux indicate that he was looking for some green or marijuana?** |
| A | **Yes, he did** |
| Q | As a matter of fact, **did he specifically state that he would take seventeen (17) grams of marijuana?** |
| A | Yes, he did. |

[Doc. No. 72-8, Tullier Depo., p. 11-12, ll. 20-25, 1-10] (emphasis added).

In the Fourth Q&A, Tullier testified to searching Rideaux's cell phone and finding text messages between Rideaux and an unknown person who was inquiring about the packages that

5

were destined for 720 South Oak Street. Tullier testified that Rideaux indicated (in the text messages) that he was looking for some green or marijuana and would take seventeen (17) grams of marijuana. Rideaux maintains that nothing was said in the text messages about "marijuana," "green," or "17 grams" and that this testimony prejudiced the grand jury.

The Government argues that the existence of the specific text message on Rideaux's phone is accurate, but the Government mistakenly attributed it to individuals who received the packages from Rideaux. The Government further argues that this is not prejudicial to Rideaux because he admitted to previously receiving $100.00 from the unknown male on two other occasions to deliver packages away from the destination address and admitted to receiving $180.00 for the final delivery on December 17, 2018.

The fifth set of questions and answers ("Fifth Q&A") addressed by Rideaux are found on page 9 of the Tullier testimony:

> Q   After stopping Mr. Rideaux, did the St. Landry Parish Sheriff's officers then execute a search warrant on 425 Carrier Street, the address in which he delivered the twelve packages?
> A   Yes, they did.
> Q   And what, if anything, did they find?
> A   Well, they were able to detain three suspects in the mobile home. And they were able to – what they did, they discovered the packages, all empty, and they had black and yellow toolboxes that were inside of those packages. And they recovered seventy – approximately seventy (70) pounds of high-grade marijuana, drug paraphernalia such as a vacuum sealer and plastic bags, and a loaded Glock handgun.
> Q   And those three individuals were subsequently placed under arrest by St. Landry Parish Sheriff's Office?
> A   Yes, they were.
> Q   After serving the search warrant there, was Mr. Rideaux then transported back to the Opelousas post office for interviewing?

[Doc. No. 72-8, Tullier Depo., p. 9, ll. 4-25].

Rideaux argues this line of questioning makes it appear as if he was a drug dealer who was part of a big drug operation.

The sixth set of questions and answers ("Sixth Q&A") addressed by Rideaux are found on page 10 of the Tullier testimony:

> A    [A]nd then he also told us during the interview that he received cash payments on three instances for delivering these packages to the people. The first two times, he received a hundred dollars ($100.00) each. And on that day, December 17th, he was given a hundred and eighty dollars ($180.00) in cash.
> Q    And did he still have the hundred and eighty dollars ($180.00) cash on his person when you interviewed him?
> A    Yes, he did.
> Q    And did you confiscate that?
> A    Yes, we did.

[Doc. No. 72-8, Tullier Depo., p. 10, ll. 13-25].

Rideaux argues that the testimony made it appear that it was improper and illegal to receive the cash tips he admitted receiving. The Government maintains this testimony was necessary because it was an element of the offense (receiving something of value to influence the performance of his duties).

The seventh set of questions and answers ("Seventh Q&A") Rideaux addresses are found on page 11 of the Tullier testimony:

> Q    So on December the 17th, **this wasn't Mr. Rideaux's first time** diverting packages that he suspected had contained narcotics to the 425 Carrier Street?
> A    **Correct**

[Doc. No. 72-8, Tullier Depo., p. 11, ll. 1-4] (emphasis added).

Rideaux argues that this testimony was incorrect as Rideaux had never before diverted packages to the 425 Carrier Street address.[2] The Government admits that Rideaux had not diverted

---

[2] Rideaux admitted diverting packages to the unknown male on four other occasions, to other locations.

7

packages to the unknown male at 425 Carrier Street before December 17, 2018, but he delivered to the unknown male on several occasions at different addresses. The Government argues this was just a mistake that did not prejudice Rideaux.

The eighth and final set of questions and answers ("Eighth Q&A") addressed by Rideaux are found on page 12 of the Tullier testimony:

> Q  Because Mr. Rideaux is considered – by virtue of his employment with the U.S. Postal Service considered a public official, when he accepted the two $100.00 payments and the $180.00 payment on December 17th of last year, **was that considered receiving a bribe by a public official?**
> A  **Yes, ma'am**

[Doc. No. 72-8, Tullier Depo., p. 12, ll. 11-18] (emphasis added).

Rideaux argues this set of questions and answers resulted in telling the grand jury to return the indictment without reading the statute. Rideaux claims the grand jury indicted him without even knowing what the law was. The Government argues that the absence of the statute from that transcript is not proof that the statute was not read to the grand jury and that Agent Tullier was not the legal advisor for the proceedings.

This Court finds that Rideaux has not met his heavy burden of proof to dismiss the indictment against him. This Court has reviewed the entire transcript of the testimony of Agent Tullier and finds no prejudice to Rideaux. The questions and answers clearly described Rideaux's role in the case. Rideaux was never designated to be a drug dealer and admitted that he did suspect that the packages contained illegal narcotics and even googled the name of the alleged tool company that sent the packages, only to find that the company did not exist. Rideaux also admittedly received $100.00 on two occasions for the delivery and admitted to receiving $180.00[3] on the date of the final delivery.

---

[3] The $180.00 was found on Rideaux and confiscated on December 17, 2018.

There were two mistakes in the testimony of Tullier. The first was in testifying that Rideaux had diverted packages to 425 Carrier Street to the unknown male. Since Rideaux had diverted packages to the unknown male at other locations (other than 425 Carrier Street) on four other occasions, this mistake was not prejudicial to Rideaux. What was relevant was that Rideaux had diverted packages to the unknown individual on other occasions before December 17, 2018, not the location where he delivered them.

The second mistake was in stating that Rideaux had asked for "green" or "marijuana" and wanted "17 grams" of it. This was a mistake by Tullier. Evidently, this conversation on Rideaux's phone was accurate, but was sent to someone else, not the unknown male. This mistake was also not prejudicial to Rideaux because he admitted receiving money on three separate occasions to divert packages to the unknown male. The testimony clearly showed that the element of "receiving something of value to influence the performance of his duties" was the cash received, not marijuana.

The law requires not only prejudice, but also a finding that Tullier committed perjury that was knowingly sponsored by the AUSA Bynog. *USA v. Strouse*, 286 F.3d 767, at 772. The Court finds these serious allegations made by Rideaux are unwarranted and without proof.

### III. CONCLUSION

For the reasons set forth herein, Rideaux's Motion to Dismiss Indictment [Doc. No. 72] is **DENIED**.

MONROE, LOUISIANA, this 1st day of June, 2021.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE